Filed 1/31/14  P. v. Farmer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT LARS FARMER,<br><br>    Defendant and Appellant. | C072339<br><br>(Super. Ct. No. 12F5403) |

A jury found defendant Robert Lars Farmer guilty of burning an inhabited structure or property.  (Pen. Code, § 451, subd. (b).)[1]  A count of attempted arson of a structure (§ 455) was dismissed.  Defendant was sentenced to prison for the upper term of eight years.

On appeal, defendant contends his conviction is not supported by sufficient evidence of burning, in violation of his Fourteenth Amendment rights.  We affirm.

---

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

1

FACTS

*Prosecution Case-in-Chief*

Daniel Hill has lived on Summit View Drive in Arnold for many years. Hill's parents and his two children from a prior relationship also lived at the residence. Jill Cook, the girlfriend of Hill and the mother of their seven-month-old daughter, lived half of the time with Hill and half of the time with her parents.

On March 11, 2012, around 2:00 a.m., Hill rode a bicycle to a location where Cook had parked his truck. Hill encountered defendant, an acquaintance who lived down the street from Hill. Defendant was walking down the road carrying a gasoline can. He passed by Hill as Hill got into the truck. When Hill drove away, he noticed a gasoline can nozzle lying in the road. Hill picked up the nozzle, slowed the truck as he passed by defendant, and attempted to return the nozzle to him. Defendant ignored Hill, who then drove home. Defendant continued walking in the direction of Hill's residence. Hill thought that defendant's behavior was odd.

Still hoping to return the gas nozzle, Hill remained outside his residence and waited for defendant to walk by. But defendant never arrived. Instead, Hill heard some rustling in the bushes behind his residence. After walking around the side of the house and down some stairs, Hill saw "all the trees at the back of the house, just lit up from the light of the fire."

Hill saw that part of a wooden post supporting the elevated deck was on fire. Hill tossed dirt on the fire to extinguish the flame. The process took a minute or two. The fire did not want to extinguish itself and would have continued to burn. Hill extinguished the flame before it did any structural damage. The fire left the wood "black." On cross-examination, Hill testified that the fire "didn't actually char" the post. He explained, "Just the surface [of the post] was burned black[; the fire] didn't actually char it."

While Hill was fighting the fire, he saw defendant running up to the road and heard him uttering nonsensical comments about Hill having raped defendant's mother.

2

At the time of the fire, Cook was sleeping inside the house with her baby. Cook awoke to the ruckus outside. She went out the side door and peeked around the corner where she could see a fire underneath the deck. Cook went outside to inquire what was going on. Hill told her that defendant had lit a fire and that defendant was on the driveway.

Cook ran up the driveway and chased defendant down the street to a corner, hollering at him. When she caught up with him, he was still carrying the gasoline can and making "weird" statements.

When Cook returned to the house, she or Hill telephoned 9-1-1. Cook retrieved a metal pole and went through the neighborhood to make sure that defendant did not return. While she was out, Cook spoke to some deputies who advised her that defendant had been apprehended. Cook returned home.

Calaveras County Sheriff's Deputy Robert Huffman responded to the 9-1-1 call. On his way to Hill's residence, just blocks away, Huffman came across defendant, who was standing in the roadway carrying a red gasoline can. Huffman had obtained defendant's name from the dispatcher and recognized defendant from prior contacts.

Before Deputy Huffman could get out of his car, defendant put down the gas can and lay face down, arms out, in the road. As Huffman approached, defendant said that he "was sorry for lighting fires to the house, but that he had to do it because they had raped his mother." Defendant elaborated that he had set three fires -- one to a residence, one to an area outside the residence, and one on the roadway.

Deputy Huffman detained defendant, put him in handcuffs, searched his person and removed evidence from his pocket including cigarettes, one or more cigarette lighters, and other personal items. Huffman put defendant in the patrol car and drove to the location of the fire.

Calaveras County Sheriff's Deputy DeAyrian Sanchez was dispatched to the fire. She and Deputy Huffman came upon defendant at the same time. Sanchez recognized defendant, who advised her that he had set several fires in specified locations.

Deputy Sanchez drove to the first location where defendant stated he had lit a fire. She found a smoldering pile of debris in front of a residence. As Sanchez was extinguishing the fire, she was approached by Cook, who asked her to come to the Summit View Drive residence. Approximately 50 feet from the residence, Sanchez observed a burn spot in the asphalt. Deputy Huffman arrived, and Sanchez pointed out the fire locations.

Hill took both deputies to the site of the fire beneath the wooden deck. Deputy Huffman saw a "wooden post that had black char on it." The char started at the base of the post and extended upward a few feet. Huffman found a partially smoked cigarette in the dirt a few feet from the post. The cigarette was the same brand as the cigarettes found on defendant. Deputy Sanchez observed "a support [post] for the residence" that was burned."

*Defense*

Defendant testified on his own behalf. He acknowledged that he had told Deputies Huffman and Sanchez that he had set fire to a residence but he testified that he did not set fire to anyone's home.

Defendant admitted that he had set several fires in the neighborhood and that they were "reckless." Defendant stated that he had been "flipping out" because his parents had done "a lot of things" that were "out of character" with their "daily habits."

In summation, defendant's counsel argued the offense has not been proven because, assuming that gasoline had been splashed on the wood post, the gasoline was burned away in the fire but the wood remained intact; "not a piece of it was charred away, was burned away, no chips were burned away, it wasn't burned into. It was still the post."

4

DISCUSSION

Defendant contends his arson conviction is not supported by sufficient evidence of burning, thus violating his Fourteenth Amendment rights. He reasons that the support post was, at most, stained by smoke or scorched. Without sufficient evidence of burning, there was insufficient evidence to establish that he committed arson. We are not persuaded.

A. *Standard of Review*

"On appeal, the test of legal sufficiency is whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. [Citations.] Evidence meeting this standard satisfies constitutional due process and reliability concerns. [Citations.] [¶] While the appellate court must determine that the supporting evidence is reasonable, inherently credible, and of solid value, the court must review the evidence in the light most favorable to the prosecution, and must presume every fact the jury could reasonably have deduced from the evidence. [Citations.] Issues of witness credibility are for the jury. [Citations.]" (*People v. Boyer* (2006) 38 Cal.4th 412, 479-480.)

" 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two [reasonable] interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' [Citation.]" (*People v. Perez* (1992) 2 Cal.4th 1117, 1124, quoting *People v. Bean* (1988) 46 Cal.3d 919, 932.)

B. *The Arson Offense*

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned . . . any structure . . . ." (§ 451.) "Arson that causes an

5

inhabited structure . . . to burn is a felony punishable by imprisonment in the state prison for three, five, or eight years." (§ 451, subd. (b).) The burning of any part of the structure, however small, completes the offense. (*In re Jesse L.* (1990) 221 Cal.App.3d 161, 166, citing *People v. Haggerty* (1873) 46 Cal. 354, 355 (*Haggerty*).)

The jury was instructed with CALCRIM No. 1502, which provided in relevant part: "The defendant is charged in Count 1 with arson that burned an inhabited structure, a violation of Penal Code section 451(b). [¶] To prove that the defendant is guilty of this crime: The People must prove that, one, the defendant set fire to or burned a structure; two, he acted willfully and maliciously; and three, the fire burned an inhabited structure."

### C. *Defendant's Contention*

Defendant takes issue with only the third element of the offense. Specifically, he claims there was insufficient evidence that the post supporting the elevated deck structure had been burned.

The amount of burning required to satisfy the arson statute was first explained by our Supreme Court in *Haggerty, supra*, 46 Cal. 354. The court explained: " 'The word "burn" . . . means to consume by fire. If the wood is blackened, but no fibers are wasted, there is no burning; yet the wood need not be in a blaze. And the burning of any part, however small, completes the offense, the same as of the whole. Thus, if the floor of the house is charred in a single place, so as to destroy any of the fibers of the wood, this is a sufficient burning in a case of arson.' [Citation.]" (*Id*. at p. 355, quoting Bishop on Criminal Law, § 325.)

In this case, the jury heard conflicting testimony from three eyewitnesses. Deputy Sanchez testified that she observed "a support [post] for the residence" that "was burned." Sanchez did not confine her remarks to "the surface of" the post. Construed most favorably to the judgment, Sanchez's testimony supports a jury finding that the post itself, and not just material on its surface, had burned in the fire. (*People v. Boyer, supra*, 38 Cal.4th at pp. 479-480.)

6

Defendant counters that, in light of photographic evidence, Deputy Sanchez appears to have used the term "burned" "loosely and not in the strict legal sense of having fibers of the wood destroyed." Defendant relies on People's exhibit 5, authenticated at trial by Deputy Huffman, which depicts two of the four sides of the square post.[2] But the exhibit does not suggest that *only* those two sides had been visible at the time of the fire. Deputy Sanchez was not shown the exhibit and did not testify that her observation of the post was confined to the portions depicted in the photograph. Thus, even if the exhibit does not show burning on the two visible sides, it does not undermine Deputy Sanchez's testimony.

Deputy Huffman testified that he saw a "wooden post that had black char on it." In the light most favorable to the prosecution, this testimony also supports the jury's finding that burning occurred. Defendant argues that "Huffman appeared to be using the noun 'char' to refer to a blackened area," rather than the sort of charring that destroys fibers of the wood. (See *Haggerty, supra*, 46 Cal. at p. 355.) This argument, like the previous one, is based on People's exhibit 5. But Deputy Huffman testified that the fire had "wrapped mostly around" the base of the post "and proceeded up." The reference to "mostly around" implies that Huffman had observed more of the post than the two sides depicted in the exhibit. Our standard of review does not allow us to speculate that portions of the post observed by the witness but not depicted in the exhibit somehow fail to support the witness's testimony. As appellant, defendant must show error affirmatively by an adequate record. (E.g., *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) This he has not done.

Hill testified that he extinguished the flame before it did any structural damage. The fire left the wood "black," but it "didn't actually char" the post. "Just the surface [of

---

[2]     The copy of People's exhibit 5 transmitted to this court is of low quality but appears to be sufficient for present purposes.

7

the post] was burned black[; the fire] didn't actually char it." Hill's testimony supported the defense theory, but the jury was not required to accept it. Viewing the evidence in the light most favorable to the verdict, it appears the jury rejected Hill's assessment of the damage, which it had a right to do.

In sum, defendant's conviction of arson of a structure is supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.


      NICHOLSON      , Acting P. J.


We concur:


      ROBIE      , J.


      DUARTE      , J.